UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANA J. BLAKE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:14-cv-00953-TWP-DKL |
| CAROLYN W. COLVIN, | ) ) ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Diana J. Blake ("Blake") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Blake's application for Disability Insurance Benefits ("DIB"). The Honorable Tanya W. Pratt, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 19.] For the reasons set forth below, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

**A. Procedural History**

Blake filed an application for DIB on June 10, 2011, alleging an onset of disability of May 9, 2010. [Dkt. 10-2 at 28.] Blake's application was denied initially on August 9, 2011, and upon reconsideration on October 17, 2011. [*Id.*] Blake requested a hearing, which was held on October 3, 2012 before Administrative Law Judge John H. Metz

1

("ALJ"). The ALJ denied Blake's application on October 24, 2012. [Dkt. 10-2 at 25.] The Appeals Council denied Blake's request for review of the ALJ's decision on April 15, 2014, making the ALJ's decision final for purposes of judicial review. Blake filed her Complaint with this Court on June 10, 2014. [Dkt. 1.]

### B. Factual Background and Medical History

Blake was born on August 12, 1966 and was 43 years old at the alleged onset of disability. She has a high school education and past relevant work as a food court manager and customer service representative. The ALJ found Blake had the following severe impairments: major depressive disorder, malingering, personality disorder, histrionic features, obesity, lumbago, degenerative disc disease, hypertension, osteoarthritis and fibromyalgia. As the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Blake requests review.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

Step One: Is the claimant currently employed;

> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c) (2).

### B. Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may be reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining

3

>whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O=Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Blake claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Blake contends the ALJ erred when he: (1) failed to properly evaluate Blake's mental impairments; (2) improperly dismissed the opinions of treating sources; and (3) discredited Blake's complaints of pain.

#### A. Blake's Mental Impairments

Blake first argues the ALJ made a "grandiose error" when he concluded that Blake's subjective assertions regarding her mental condition were not supported by the objective evidence. She further asserts the psychological testing performed by Dr. Polizzi supported Blake's contention of disabling mental impairments, but was dismissed by the ALJ as a "one-time assessment." [Dkt. 12 at 18.] Dr. Polizzi, a clinical psychologist, provided a half-page letter on November 30, 2010, indicating that Blake underwent a

4

psychological assessment that resulted in a diagnosis of "chronic and debilitating depression" and that her "prognosis is poor." [Dkt. 10-9 at 74.] The letter included few details and no analysis of Blake's ability to perform work.

The ALJ gave Dr. Polizzi's opinion little weight, reasoning that the "totality of the evidence" suggested the opinion was primarily based upon Blake's subjective complaints. [Dkt. 10-2 at 40.] Among this "totality of the evidence" are the opinions of three other medical providers who evaluated Blake or her medical records *subsequent* to Dr. Polizzi and concluded Blake was able to maintain employment. On August 1, 2011, Dr. Schneider, a state agency psychologist, evaluated Blake and reported while she "has some legitimate depression … it would be therapeutic for her to have something to do that would get her out of the house occasionally … such as a part or full time job." [Dkt. 10-9 at 15.] Dr. Schneider also noted his concern that Blake was trying to exaggerate her psychiatric impairment. Also in August 2011 Dr. Johnson, another state agency psychologist, concluded after an evaluation that Blake had no significant limitations in her mental functioning. [Dkt. 10-9 at 16-18.] Then at the hearing, Dr. Olive, a psychologist, testified that based upon her medical records Blake was capable of performing unskilled work that did not require forced-production. The ALJ discussed each of these opinions before concluding that Dr. Polizzi's opinion was not supported by the other evidence in Blake's medical record.

Contrary to Blake's assertion, the ALJ's dismissal of Dr. Polizzi's opinion does not constitute an insistence on objective evidence to establish Blake's mental impairments. The ALJ credited the three medical sources who determined Blake was able to work over

the opinion of the single medical source who determined that she could not. As there is substantial evidence to support the ALJ's conclusion, this issue does not provide basis to overturn the determination of no disability.

### B. <u>Opinions of Treating Sources</u>

Blake argues the ALJ improperly evaluated the opinion of several treating sources, including her pain management physician, Dr. Green-Mack. Dr. Green-Mack completed a Physical Capacities Evaluation that indicated Blake was unable to work due to the level of pain in her back and hips. [Dkt. 10-10 at 56.] Typically, the opinion of a treating source on "the nature and severity of a medical condition is entitled to controlling weight if supported by medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(d)(2). However, the opinion of a treating source "is not the final word on a claimant's disability." *Schmidt,* 496 F.3d at 842 (internal quotations and citations omitted). The Seventh Circuit has recognized that while a treating physician has the advantage over other physicians because he has spent more time with the claimant, many physicians will "bend over backwards to assist a patient in obtaining benefits." *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006.) Therefore, "the weight properly given to testimony or other evidence of a treating physician depends on circumstances." *Id.* Accordingly, the ALJ may discount a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt,* 496 F.3d at 842.

6

Here, the ALJ gave several reasons for discrediting Dr. Green-Mack. First, the ALJ points out that Dr. Green-Mack relied heavily on Blake's subjective report of symptoms and limitations. The treatment notes consist of a recitation of Blake's symptoms and medication dosages. As the ALJ observed, "there appears to be little actual treatment other than the prescription of medication." [Dkt. 10-2 at 37.] The ALJ also noted that both of the medical experts who testified at the hearing remarked that Blake was "over-medicated" in relation to the generally normal medical findings and that the excessive amounts of narcotics likely led to additional problems. *Id.* The ALJ cited records from two other doctors that recommended Blake's pain medication be cut back. Following this analysis, the ALJ concluded Dr. Green-Mack's opinion warranted little weight. The Court finds the ALJ provided sufficient reasons to discount Dr. Green-Mack's opinion. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (An ALJ must articulate "good reasons" for rejecting the opinion of a treating physician.)

Blake also claims the ALJ improperly evaluated the opinion of Dr. Polizzi and two nurses. The Court addressed Dr. Polizzi's opinion above and determined that the ALJ's decision to discredit her opinion was supported by substantial evidence. Blake fails to provide any argument with regard to the opinions of the two nurses. Consequently, it is not necessary for the Court to address the ALJ's treatment of the nurses' opinions.

### C. Blake's Credibility

Lastly, Blake asserts the ALJ improperly discredited her complaints of pain solely because they were more extreme than the objective evidence could support. In assessing a claimant's credibility when the allegedly disabling symptoms are not objectively

7

verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

Demonstrating that a credibility determination is "patently wrong" is a high burden, and Blake has not satisfied it here. Blake testified that chronic pain prohibited her from standing more than 15-20 minutes at a time; sitting for more than 30-40 minutes at a time and walking more than one block at a time. She also testified that she sees shadows, hears voices and has trouble concentrating. In discrediting Blake, the ALJ cited a number of factors that cast doubt on her alleged symptoms. For example, Blake underwent a physical consultative examination on July 30, 2011. The ALJ noted that Blake walked with a normal gait, appeared comfortable in both seated and supine positions, could get on and off the exam table without difficulty and could bend over and attend to footwear without difficulty. The physician concluded that Blake was able to work eight hours a day. Blake also underwent a consultative examination for her alleged mental impairments on August 1, 2011. During that exam, Dr. Schneider noted that Blake's

8

reports of hallucinations were not very compelling and he was concerned that she was trying to exaggerate her degree of psychiatric impairment.

In addition to discussing evidence inconsistent with the severity of Blake's alleged symptoms, the ALJ also noted that several physicians were concerned about non-compliance with treatment recommendations and possible over-medication. For example, Blake complained of excessive daytime sleepiness as a result of her history of sleep apnea. After reviewing Blake's medical records, Dr. Sklaroff testified that a full-face mask for the CPAP machine essentially eliminated her apnea. But Blake switched to a nasal mask, which was less effective, and records indicated that she often takes it off and sleeps without treatment at all. The ALJ cited records from two other physicians who reported their concern about possible over-medication with narcotic pain medicine which also causes sleepiness.

An ALJ's credibility determination need not be flawless. *Simila,* 573 F.3d at 517. Only when it is "lack[ing] any explanation or support," will it be deemed "patently wrong." *Id.* Here, the above evidence cited by the ALJ in discrediting Blake constitutes substantial evidence in support of his decision.

IV.  **CONCLUSION**

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the

9

record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Blake does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Date: May 8, 2015

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov